**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

APR 02 2019

ARTHUR JOHNSTON
BY_____ DEPUTY

| | | |
|---|---|---|
| **GREG BURROUGHS** | ) | Civil Action No. 2:19cv48-KS-MTP |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF LAUREL, MISS.;** | ) | |
| **MICHAEL REEVES, in his individual** | ) | |
| **capacity as a City of Laurel** | ) | |
| **Law Enforcement Officer; and JOSH WELCH,** | ) | |
| **in his individual capacity as a City of Laurel** | ) | |
| **Law Enforcement Officer; and** | ) | |
| **JOHN DOES 1-5** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, by and through his attorney, for his Complaint allege, upon knowledge as to himself and otherwise upon information and belief, as follows:

### I.   PRELIMINARY STATEMENT

1.      This is a civil action brought pursuant to 42 U.S.C § 1983 that seeks to remedy the unconstitutional deprivation of Plaintiff's statutory and constitutional rights. The conduct by Defendants, acting in concert with their officers, agents, servants, employees and attorneys, and all other persons in active concert or participation, violates Plaintiff's rights, privileges, and immunities under the United States Constitution, as amended, specifically numerous violations of the Fourth Amendment and the Fourteenth Amendment.

2.      Plaintiff also brings the supplemental state law claim of malicious prosecution, defamation, slander, and false imprisonment.

3.      The relief Plaintiff seeks is supported by satisfactory proofs, including the public records, facts and other documentation referenced throughout the Complaint.

4.      Plaintiff seeks nominal, actual, compensatory and punitive damages against all Defendants for the flagrant, willful, knowing, violation of their constitutionally protected rights and violations of federal statutes, as well as the costs of litigation, including reasonable attorney's fees.

5.      Plaintiff further seeks to ensure that the constitutional rights of himself and others are protected and that the Defendants are prevented from violating the rights of other persons in Jones County.

## II.      JURISDICTION

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3)(4), which confers original jurisdiction on federal district courts to redress the deprivation of rights, privileges and immunities as stated herein.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

## III.      VENUE

8.      Venue is proper in the United States District Court for the Southern District of Mississippi, Eastern Division, pursuant to 28 U.S.C. § 1391(b), because a majority of the claims arise in Jones County, Mississippi.

## IV.      IDENTIFICATION OF PARTIES

9.      Plaintiff, GREG BURROUGHS, is an adult resident of Jones County, Mississippi.

10.     Defendant, CITY OF LAUREL, MISSISSIPPI, hereinafter "Laurel," is a political subdivision of the State of Mississippi, organized and existing pursuant to the laws of the State of Mississippi and charged with the oversight and the supervision of the Laurel City Police Department. Laurel may be served with process, pursuant to Mississippi law, upon Johnny Magee, Mayor of the City of Laurel, Mississippi. Mr. Magee can be served at Laurel City Hall located at 401 N. 5th Avenue, Laurel, Mississippi.

11.     Defendant MICHAEL REEVES is/was a law enforcement officer for the City of Laurel He is sued in his individual and official capacity and may be served with process at 317 S. Magnolia Street, Laurel, Mississippi.

12.     Defendant JOSH WELCH, who is sued in his individual and official capacity, is/was a law enforcement officer for the City of Laurel and may be served with process at 317 S. Magnolia Street, Laurel, Mississippi.

## V.     STATEMENT OF FACTS

13.     On or about June 1, 2017 officers with the City of Laurel responded to a reported self-inflicted gunshot wound at the home of Greg Burroughs (hereinafter "Mr. Burroughs").

14.     Mr. Burroughs called 911 to report that his girlfriend, Katherine Sinclair, had shot herself while in Mr. Burroughs's garage.

15.     Law enforcement officers for the City of Laurel had difficulty locating Mr. Burroughs's home, forcing Mr. Burroughs to leave the garage and flag down officers who were in Mr. Burroughs's neighborhood but could not locate Mr. Burroughs's residence.

16.     Once law enforcement arrived at the scene, they began to process the scene and question Mr. Burroughs. Mr. Burroughs was completely cooperative, answering all questions and

allowing law enforcement officials full access to his home and his person. Mr. Burroughs was questioned on multiple occasions throughout the evening by multiple officers.

17.     Officers who processed the scene and the vehicle wore body cameras which captured the scene as viewed by the officers contemporaneously with their investigation of the scene of the incident. Mr. Burroughs's statements to officers were consistent with the body camera footage.

18.     Once officers collected evidence, the vehicle Katherine Sinclair had shot herself in was towed away for further processing and officers informed Mr. Burroughs's family and his neighbors that they could clean up the garage because the "scene" was the vehicle that had been towed. No person was allowed to clean or alter the vehicle before the vehicle was towed by law enforcement, despite apparent reports from the Defendants otherwise.

19.     Later that same night, Mr. Burroughs was told that he was being taken to the police station to give a statement. Mr. Burroughs cooperated and was not placed in handcuffs at that time. In addition, Mr. Burroughs was told that he would be back home shortly, and that he was not under arrest.

20.     Upon arrival at the police station in Laurel, Mr. Burroughs was questioned and voluntarily consented to being given a polygraph examination. Said polygraph examination was given immediately after Mr. Burroughs was interviewed[1] and within hours of his girlfriend shooting herself.

21.     Mr. Burroughs was questioned by Defendant Michael Reeves. At the conclusion of questioning Mr. Burroughs asked if he was under arrest and was told "No" by Defendant Reeves.

---

[1] Contrary to polygraph examination rules and guidelines

4

22.     The polygraph examination was then conducted by Defendant Josh Welch, who upon information and belief, only had a temporary license. Further, the machine used by Defendants was outdated and Mr. Welch relied upon polygraph examination procedures no longer followed by officially licensed polygraph examiners due to the known inaccuracies of these practices and procedures.

23.     In further contravention of standard procedures related to polygraph examinations, Defendant Josh Welch was the same officer who had failed to show up to court on a prior occasion involving Mr. Burroughs, and said charges were dismissed by the Court.

24.     No Defendant informed Mr. Burroughs that a polygraph examination should not be administered within 48 hours of a traumatic event.

25.     No Defendant informed Mr. Burroughs that a polygraph examination should not be administered following an interrogation.

26.     No Defendant informed Mr. Burroughs that a polygraph examination should not be administered by a person [Welch] who has a history with the party being questioned.

27.     Following the polygraph examination, Mr. Burroughs was informed by the individual Defendants that he had failed[2] the polygraph, to which Mr. Burroughs told them that was not possible.

28.     Despite not being charged with a crime, Mr. Burroughs was placed in a cell and placed in solitary confinement.

29.     While Mr. Burroughs was confined, the Defendants requested warrants to search Mr. Burroughs's home. There was no need for the warrants as Mr. Burroughs had been fully cooperative and would have consented to the search of the home. These warrants included a request

---

[2] The results of the polygraph have been reviewed by an expert who has stated that Mr. Burroughs likely did not actually fail the polygraph examination. Officers telling "suspects" that they failed is simply an interrogation tactic.

for "drugs, money, and guns…" which played no role in the investigation. These sloppy and hastily drafted warrants foreshadowed and exemplified the manner in which the entire investigation was undertaken by the Defendants.

30.     During the first search of the home, the officers apparently failed to find any "evidence" primarily because there was no other evidence.

31.     The officers acquired a second search warrant. During the second search of the home, the officers again failed to locate any "evidence." Officers photographed the home during each search.

32.     While Mr. Burroughs was incarcerated, the Defendants performed multiple strip searches on Mr. Burroughs, despite the fact that he was in police custody in between each strip search.

33.     After the Defendants searched the home twice, and after being confined for more than 86 hours without being charged with a crime, Mr. Burroughs was released from custody. Mr. Burroughs was not questioned by any investigator except for the initial interrogation and statement given upon arrival at the jail.

34.     When Mr. Burroughs arrived home, he found the shirt he had been wearing, from the night of the incident, in his closet. The officers had failed, despite two separate searches, to locate the shirt which was in plain sight. A review of photographs taken by Reeves when the home was searched revealed that the shirt was visible and in the closet during both prior searches by law enforcement. The shirt was immediately provided to law enforcement.

35.     Officers and investigators for the City of Laurel questioned family and friends of Mr. Burroughs and Katherine Sinclair. Astonishingly, these officers and investigators failed to identify which hand Katherine Sinclair used while shooting firearms. An attorney representing the

family of Katherine Sinclair later submitted affidavits to law enforcement further admitting the fact that Katherine Sinclair used her right hand to shoot pistols, further corroborating the testimony provided by Mr. Burroughs regarding the events of the night Katherine Sinclair passed away.

36.     According to witness statements, the Defendants did not want to hear or receive evidence which supported Mr. Burroughs's innocence or evidence which corroborated evidence of a self-inflicted gunshot wound by Ms. Sinclair.

37.     Several weeks later, Mr. Burroughs learned that he was being charged with the murder of Katherine Sinclair, despite the facts of the case being wholly consistent with a self-inflicted gunshot wound, ultimately causing the death of Katherine Sinclair.

38.     At the time the charges were brought against Mr. Burroughs, the Defendants lacked probable cause to charge Mr. Burroughs as all credible and reasonable evidence gathered and submitted was wholly consistent with a self-inflicted gunshot wound. Any purported "probable cause" was the result of a reckless investigation and intentional/reckless alteration of factual findings and disregard for the truth.

39.     Given the facts of the case, no objectively reasonable officer would have believed that Mr. Burroughs shot Katherine Sinclair as opposed to a self-inflicted gunshot wound. The testimony of officers at trial revealed that the facts of this case were consistent with suicide.

40.     Mr. Burroughs was eventually indicted for the death of Katherine Sinclair; however, questions remain regarding what evidence the Defendants put forward regarding the death of Katherine Sinclair.

41.     Upon information and belief, members of the grand jury did not originally believe that the Laurel police department could substantiate a charge of murder or manslaughter against

Mr. Burroughs. The grand jury's doubts are the likely reason that the Defendants began to disseminate false/misleading information to media outlets.

42.     Upon information and belief, false and/or grossly misleading evidence was presented to the grand jury by the Defendants to secure Mr. Burroughs' indictment.

43.     Following a week-long trial, Mr. Burroughs was found not guilty by a jury of 12 peers.

44.     As a direct and proximate result of the press and the misinformation disseminated by the Defendants through the press and other media, Mr. Burroughs's reputation in the community has been harmed to such an extent that Mr. Burroughs may be forced to move out of Jones county.

45.     The actions of the Defendants further harmed the reputation and memory of the deceased, Katherine Sinclair, because Mr. Burroughs was forced to defend himself which unfortunately included the use of private information regarding Katherine Sinclair. But for the Defendants' reckless and negligent actions, private and intimate details regarding Ms. Sinclair would have remained private.

**The Defendants' investigation**

46.     During the investigation, Laurel officers wholly and recklessly failed to conduct an adequate investigation which would have exonerated Greg Burroughs and prevented any reasonable officer from proceeding with the indictment of Greg Burroughs.

47.     The investigation undertaken by the Laurel police Department, Defendant Reeves and Defendant Welch was wholly reckless and/or intended to harm Mr. Burroughs or at the very least, worsen Mr. Burroughs' legal plight.

48.     Michael Reeves was the lead investigator on the case and failed to collect and consider material evidence exonerating Mr. Burroughs.

49.     Based upon the facts and circumstances, Mr. Reeves utilized an inadmissible and illegitimate polygraph examination in determining probable cause. The polygraph apparently served as the basis for Mr. Burroughs's incarceration.

50.     Reeves failed to note blowback and tissue on the firearm used by Katherine Sinclair which wholly supported the statements made by Mr. Burroughs and were consistent with suicide. Alternatively, Reeves intentionally disregarded the blowback evidence which corroborates Mr. Burroughs's version of events. Reeves' own officers had previously documented and noted the tissue on the firearm, but said evidence was ignored and left out of Reeves' own reports without any reasonable or objective basis.

51.     Reeves failed to fingerprint the firearm which would have provided exculpatory evidence and further supported the statements made by Mr. Burroughs and were consistent with suicide.

52.     Reeves failed to maintain possession of the holster used by Katherine Sinclair to hold the firearm and Reeves failed to fingerprint the holster to exonerate Mr. Burroughs.

53.     Reeves failed to collect evidence regarding tissue on either Katherine Sinclair's hands or Greg Burroughs.

54.     Reeves and/or Welch accused Mr. Burroughs of having GSR on his hands and/or washing said GSR off of his hands, despite the fact that Mr. Burroughs' hands still had blood on

his hands. Mr. Burroughs did have trace amounts of GSR type particles on his hands, which is wholly consistent with Mr. Burroughs version of events and innocence.

55.     The location and amounts of GSR on Mr. Burroughs's hand/s were wholly inconsistent with an individual who had fired the weapon which ultimately caused Katherine Sinclair's death. Rather, the trace amounts of GSR were wholly consistent with someone who was in the area where a firearm was fired.

56.     Reeves failed to send Mr. Burroughs or Katherine Sinclair's clothes for testing. Said testing would have further exonerated Mr. Burroughs and further corroborated the version of events provided by Mr. Burroughs.

57.     Defendant Welch knew that the polygraph examination he conducted was not legitimate, nor was said examination conducted in accordance with industry and investigatory standards. Despite this knowledge, Defendant Welch allowed the allegedly "failed" polygraph examination to be leaked and disseminated by media outlets in an apparent attempt to tarnish and destroy Mr. Burroughs's reputation while intentionally tainting any potential Jones County jury pool.

## VI.   ALLEGATIONS OF LAW

58.     All acts of Defendants were conducted under the color and pretenses of the ordinances, policies, practices, customs, regulations, usages and/or statutes of the United States Government, the State of Mississippi and/or City of Laurel.

59.     Defendant Laurel has a custom, pattern and practice of providing false/misleading information to news media outlets regarding the facts of pending investigations and cases.

60.     It is the policy, practice or custom of all Defendants to violate the procedural and substantive due process rights of those citizens under their jurisdiction.

61.     It is the policy, practice or custom of all Defendants to violate the search and seizure rights of those citizens.

62.     It is the policy, practice or custom of all Defendants to conspire to interfere with the civil rights of its citizens.

63.     It is the policy, practice or custom of all Defendants to engage in actions that are fundamentally unfair to its citizens.

64.     It is the policy, practice or custom of all Defendants to falsely imprison its citizens.

65.     It is the policy, practice or custom of all Defendants to maliciously prosecute its citizens.

66.     Defendants did not have reasonable suspicion and/or probable cause to seize and confine Mr. Burroughs for 86 hours.

67.     Defendant City of Laurel and Chief Stewart, as supervisors of Defendants Reeves and Welch, failed to train and/or supervisor their subordinates to prevent the actions described herein.

68.     At the time Plaintiff was seized by Defendants, he did not have the freedom to leave.

69.     Defendants' seizure of Plaintiff impacted his liberty and privacy interests.

70.     Under the circumstances, the seizure and confinement of Plaintiff was not reasonable.

71.     Defendants' actions, as alleged herein, were made in bad faith and were designed and intended to punish Plaintiff.

72.     Defendants, by and through their actions and under the color of law, violated Plaintiff's constitutionally protected rights.

11

73.    Defendants' actions, as alleged herein, were made with actual malice and/or constituted willful misconduct.

74.    At all times relevant, the Plaintiff's constitutional rights, as alleged herein, were violated.

75.    At all times relevant, the Plaintiff's constitutional rights, as alleged herein, were clearly established.

76.    The customs, policies, and/or actual practices that allowed the unconstitutional arrest, prosecution, and incarceration of Plaintiff, described herein, were necessarily consciously approved by Defendants.

77.    It was the custom, practice and policy of the City of Laurel, through its officers, to engage in the misconduct described herein.

78.    Plaintiff has suffered injury to his constitutional and statutory rights.

79.    Because of Defendants' conduct, Plaintiff has suffered humiliation, embarrassment, and loss of reputation.

80.    Alternatively, because liability is in effect for issues of this kind, and because it is the intent of the Mississippi Legislature that the Defendants pay any claims for violation of a citizen's rights in damages under Mississippi Law, the doctrine of *Monell v. Department of Social Services*, 475 U.S. 335 (U.S. 1986), should not apply to this cause, and the Defendants should be held vicariously liable for its officials causing the civil liberty violations of Plaintiff.

## VII.    FIRST CAUSE OF ACTION – 42 U.S.C. § 1983
### (Fourth Amendment/Fourteenth Amendment – Unlawful Seizure)
### (Against All Defendants)[3]

---

[3] Each of Plaintiff's claims for relief is brought against all Defendants in their capacities as identified in the caption.

81.     All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

82.     The unlawful actions of the Defendants, as alleged herein, constituted an intrusion into Plaintiff's right to be free from an unlawful seizure of his person.

83.     All Defendants had an affirmative duty to prevent such intrusions.

84.     Defendants, acting without authority, knowingly and unlawfully seized and incarcerated Plaintiff for 86 hours without charging Plaintiff with a crime and without probable cause.

85.     More specifically, Defendant Reeves, upon information[4], caused Mr. Burroughs to be confined and placed in solitary confinement without probable cause or charging Mr. Burroughs with any criminal act.

86.     Upon belief Defendants Reeves and Welch's[5] presented distorted and potentially perjurious testimony to official bodies in order to maliciously bring about Plaintiff's arrest, prosecution, and continued confinement.

87.     Defendants, acting knowingly, maliciously, willfully and wantonly, and evincing a complete and utter disregard for the truth, instituted legal proceedings against Plaintiff, including seeking an indictment, prosecuting and confining Plaintiff with knowledge that the evidence procured against Plaintiff was unlawful, false, inadmissible, misleading and/or inaccurate.

88.     Defendant City of Laurel and Chief Stewart, as supervisors of Defendants Reeves and Welch, recklessly, knowingly, intentionally, willfully and wantonly, participated in, knew of, condoned and/or approved the wrongful acts described herein, with the intent and understanding to bring about Plaintiff's unconstitutional arrest, prosecution, and confinement.

---

[4] Apparently based wholly upon an illegitimate polygraph examination.
[5] Upon information and belief because the grand jury proceedings are currently unknown to Burroughs

13

89.     Despite knowing that the evidence procured against Plaintiff was unlawful, false, inadmissible, and/or inaccurate – no Defendant attempted to correct the record and the evidence used against Mr. Burroughs.

90.     Plaintiff has an established constitutional right to be free from an unlawful confinement.

91.     As a direct and proximate cause of Defendants' actions, Plaintiff's rights, as guaranteed by the Fourth and Fourteenth Amendment, were injured.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below.

### VIII.     SECOND CAUSE OF ACTION – 42 U.S.C. § 1983
### (Fourteenth Amendment – Due Process)
### (Against All Defendants)

92.     All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

93.     The unlawful actions of Defendants, as alleged herein, deprived Plaintiff of his right to due process.

94.     Upon information and belief, Defendants Reeves and Welch leaked false and/or grossly misleading information to media outlets in an attempt to defame Mr. Burroughs and bias grand jurors and potential petit jurors against Burroughs.

95.     Other employees and agents of Laurel may have leaked false information, and investigation into these facts is ongoing.

96.     Despite knowing that the evidence procured against Plaintiff and unlawfully leaked to media outlets was unlawful, false, inadmissible, and/or inaccurate – no Defendant attempted to correct the record and the evidence used against Mr. Burroughs.

97.     Further, upon information and belief these "leaks" were done in such a way as to taint any potential jury pool and bias potential jurors against Mr. Burroughs potentially leading to Mr. Burroughs's indictment.

98.     As a direct and proximate cause of Defendants' actions, Plaintiff's rights, as guaranteed by the Fourteenth Amendment, were injured.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below.

### IX.     THIRD CAUSE OF ACTION – 42 U.S.C. § 1983
### (Fourth Amendment/Fourteenth Amendment – False Imprisonment)

99.     All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

100.    The unlawful actions of Defendants, as alleged herein, deprived Plaintiff of his right against false imprisonment.

101.    Defendants recklessly, knowingly, intentionally, willfully and wantonly imprisoned Plaintiff for 86 hours and placed in Plaintiff in solitary confinement without probable cause or objective reasonableness.

102.    According to officers, Defendant Reeves ordered Mr. Burroughs incarcerated and placed in solitary confinement without probable cause.

103.    No reasonable officer, with the information each had in his or her possession when seeking the arrest and prosecution of Plaintiff, would have found that extended confinement of Plaintiff was lawful.

104.    Plaintiff was not charged with a crime at the time of his confinement, nor was Plaintiff required to post any bond upon his release.

105.    Based on the acts described herein, the process by which Plaintiff was wrongfully arrested, prosecuted and confined, was so wholly lacking in the concept of justice in a civilized society, that Plaintiff was never actually provided legal process and, therefore, was falsely imprisoned by Defendants.

106.    Defendant City of Laurel and Chief Stewart, as supervisors of Defendants Reeves and Welch, respectively, recklessly, knowingly, intentionally, willfully and wantonly, participated in, knew of, condoned and/or approved the wrongful acts of Defendants Reeves and Welch, described herein, with the intent and understanding to bring about Plaintiff's unconstitutional arrest, prosecution, conviction and continued confinement.

107.    As a direct and proximate cause of Defendants' actions, Plaintiff's rights, as guaranteed by the Fourth and Fourteenth Amendment, were injured.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below

## X.    FOURTH CAUSE OF ACTION – 42 U.S.C. § 1983
### (Fourteenth Amendment – Procedural & Substantive Due Process)
### (All Defendants)

108.    All prior paragraphs of the Complaint are incorporated herein by reference, the same as though plead in full.

109.    The unlawful actions of Defendants, as alleged herein, deprived Plaintiff of his right to fundamental fairness in a criminal proceeding.

110.    Upon information and belief, all Defendants undertook a course of action to "prosecute" Plaintiff in the court of public opinion, disseminating false and grossly misleading information to news media outlets, including, but not limited to:

      a.   The illegitimate results of Plaintiff's polygraph examination;

      b.   Location of the Plaintiff's shirt;

c.  Phone records;

d.  Plaintiff's alleged criminal history;

e.  Location and trajectory of the shot which ultimately caused the death of Katherine Sinclair;

f.  "cleaning" of the scene of the shooting;

g.  GSR on Plaintiff's hands; and

h.  Plaintiff's behavior on the night Katherine Sinclair was shot.

111.  Based upon the facts of the case, no name clearing hearing will adequately restore the substantial damage done to Plaintiff's name and reputation. Mr. Burroughs was found "not guilty" at trial but the damages caused by the Defendants' actions are irreversible.

112.  As a direct and proximate cause of Defendants' actions, Plaintiff's rights, as guaranteed by the Fourteenth Amendment, were injured.

WHEREFORE, Plaintiff prays for relief against all Defendants as set forth below.

### XI.  FIFTH CAUSE OF ACTION – 42 U.S.C. § 1983
### (Fourth Amendment/Fourteenth Amendment – Conspiracy to Interfere)
### (All Defendants)

113.  All prior paragraphs of the Complaint are incorporated herein by reference, the same as though plead in full.

114.  Defendants Reeves and Welch recklessly, knowingly, intentionally, willfully and wantonly conspired with one another, and others, to deprive Plaintiff of his Fourth and Fourteenth Amendment rights under the United States Constitution by bringing about his wrongful arrest, prosecution, and confinement, in spite of knowledge that the evidence used to justify such charges was inaccurate, misleading, and distorted.

115.    Defendant City of Laurel and Chief Stewart, as supervisors of Defendants Reeves and Welch, respectively, recklessly, knowingly, intentionally, willfully and wantonly, took overt acts in furtherance of the conspiracy by supervising, condoning, and/or approving the wrongful acts of Defendants Reeves and Welch, described herein, with the intent and understanding to bring about Plaintiff's unconstitutional arrest, prosecution, conviction and continued confinement.

116.    As a direct and proximate cause of Defendants' actions, Plaintiff's rights, as guaranteed by the Fourth and Fourteenth Amendment, were injured.

WHEREFORE, Plaintiff prays for relief against all Defendants as set forth below.

### XII.    SIXTH CAUSE OF ACTION – 42 U.S.C. § 1983
### (Failure to Train and/or Supervise)
### (Defendant City of Laurel)

117.    All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

118.    Defendants have failed to provide adequate training to their administration, staff and/or faculty.

119.    Defendants have failed to supervise their administration, staff and/or faculty.

120.    Specifically, Defendants have failed to train and/or supervise their administration, staff and/or faculty from violating Plaintiff's constitutional rights, as described herein.

121.    Defendants' failure to train and/or supervise was the proximate cause of Plaintiffs' injuries.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below.

### XIII.    SEVENTH CAUSE OF ACTION – 42 U.S.C. § 1983
### (Fourteenth Amendment – Fabrication/Misrepresentation of Evidence)

122.   All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

123.   Upon information and belief, Defendants Reeves and Welch provided deliberately or recklessly false/misleading evidence and/or information in order to prosecute and indict Plaintiff.

124.   Defendants Reeves and Welch knew, or with reasonable diligence would have known, that all evidence gathered and processed regarding Katherine Sinclair was consistent with suicide and further consistent with Plaintiff's innocence.

125.   Defendant Welch knew that Plaintiff did not fail a polygraph, or alternatively, Defendant Welch knowingly conducted and administered the polygraph examination knowing that the proper procedures and rules regarding polygraphs were not followed. Despite this information, Welch disseminated and reported to others that Plaintiff had "failed" the polygraph examination.

126.   Neither Welch nor Reeves informed any person that that the proper procedures and practices were not followed during Mr. Burroughs's polygraph examination.

## XIV.   EIGHTH CAUSE OF ACTION – Supplemental State Law Claims
### (Defendants Reeves and Welch)

127.   All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

128.   Upon and information belief, Defendants Reeves and Welch leaked and/or caused false and/or misleading information to be printed by the news media in an effort to bias grand jurors and/or petit jurors against Burroughs.

129.   Defendants Reeves and Welch failed to correct false and/or misleading information which was printed and reported by the news media.

130.   Defendants' malicious prosecution was the proximate cause of Plaintiff's injuries.

131.  Defendants' actions as alleged herein constitute the torts of abuse of process, malicious interference, defamation, outrage, and the intentional infliction of emotional distress.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court:

a.   Assume jurisdiction over this action;

b.   Declare that Defendants' actions, as herein described, violated Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendment to the United States Constitution;

c.   Appropriate equitable relief including but not limited to prospective injunctive relief, declaratory and other injunctive remedies;

d.   Award Plaintiffs nominal and actual damages for Defendants violation of their constitutional and statutory rights;

e.   Award Plaintiff compensatory damages, including, but not limited to, those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, loss of reputation, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

f.   Punitive damages for all claims allowed by law in an amount to be determined at trial;

g.   Pre-judgment and post-judgment interest at the highest lawful rate;

h.   Award Plaintiff his costs of litigation, including reasonable attorney's fees and expenses, pursuant to 42 U.S.C. sec. 1988 and/or 20 U.S.C. sec. 1400 et seq., and

i.   Grant such other relief to which Plaintiff may be entitled or as this Court deems necessary and proper.

Respectfully submitted this the ____ day of April, 2019.

DANIEL M WAIDE
MSB #103543

Daniel M Waide, MS Bar #103543
Johnson, Ratliff & Waide, PLLC
1300 Hardy Street
Hattiesburg, MS 39401
T: (601) 582-4553
F: (601) 582-4556
dwaide@jhrlaw.net