## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**GREG BURROUGHS**                                                    **PLAINTIFF**

**v.**                                     **CIVIL ACTION NO. 2:19-CV-48-KS-MTP**

**CITY OF LAUREL, MISSISSIPPI,** *et al.*                           **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants in part and denies in part** Defendants' Motion to Dismiss [18]. The Court grants the motion with respect to Plaintiff's state-law abuse of process claim against the individual Defendants in their individual capacities, Plaintiff's claim for punitive damages against the City, and Plaintiff's § 1983 official-capacity claims against the individual Defendants. The Court also grants the motion as to any claims arising from Defendants' alleged testimony before the grand jury, pursuant to Plaintiff's concession in briefing. The Court denies the motion in all other respects.

### I. BACKGROUND[1]

This case arises from a criminal investigation and prosecution in Laurel, Mississippi. In June 2017, Katherine Sinclair, Plaintiff's girlfriend, died from a gunshot wound. At the time of her death, she was in a car parked in Plaintiff's garage. Plaintiff called 911 and reported that his girlfriend had shot herself. Officers towed

---

[1] The Court's account of the background of this case is based on Plaintiff's allegations in the Amended Complaint, as the Court must accept such allegations as true when addressing the present motion. *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010).

the vehicle, questioned Plaintiff, and collected evidence. Later that night, officials asked Plaintiff to give a statement at the police station and told him that he was not under arrest. Plaintiff didn't leave the police station until over eighty-six hours later. Defendants gave Plaintiff a polygraph examination, subjected him to multiple strip searches, kept him in solitary confinement, and performed two searches of his home before they released him. Defendants Michael Reaves and Josh Welch were police officers employed by the Defendant, City of Laurel, Mississippi, during these events.

Weeks later, a grand jury indicted Plaintiff for the alleged murder of Sinclair. Plaintiff alleges that the grand jury declined to indict him upon Defendants' first attempt. He contends that Defendants ultimately acquired an indictment by presenting the grand jury with fabricated and/or misleading evidence. He complains of numerous irregularities in the investigation and prosecution – particularly with the polygraph examination, which he contends Defendants knew was flawed and/or tainted in several respects. A jury eventually acquitted Plaintiff, but he alleges that Defendants' malicious dissemination of fabricated and/or misleading evidence to the press has damaged his reputation and standing in the community. He claims to have received death threats. Plaintiff filed this lawsuit, alleging numerous constitutional and state-law claims against Defendants. Defendants filed a Motion to Dismiss [18], which the Court now considers.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

## III. DISCUSSION

### A. *State-Law Claims*

#### 1. *MTCA Notice Requirement*

First, Defendants argue that Plaintiff failed to comply with the Mississippi Tort Claims Act ("MTCA") and provide the required notice of his state-law claims. The MTCA codified the common-law sovereign immunity of Mississippi and its political subdivisions. MISS. CODE ANN. § 11-46-3(1). It "provides the exclusive remedy against a governmental entity or its employees" under Mississippi law. *Covington County Sch. Dist. v. Magee*, 29 So. 3d 1, 4 (Miss. 2010). But the MTCA's waiver of sovereign immunity is subject to numerous conditions, restrictions, and limitations.

Among these is the Act's notice-of-claim requirement.

The statute provides that "any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity." MISS. CODE ANN. § 11-46-11(1). The Mississippi Supreme Court "strictly applies the ninety-day notice requirement . . . ." *Gordon v. Rance*, 52 So. 3d 351, 358 (Miss. 2011). It "is a hard-edged, mandatory rule," *id.*, that applies "equally to cases in which notice is filed, notice is filed after the complaint, or the complaint is filed sooner than ninety days after filing notice." *Brown v. Sw. Miss. Reg'l Med. Ctr.*, 989 So. 2d 933, 936 (Miss. Ct. App. 2008).

Plaintiff argues that the notice requirement does not apply because his state-law claims do not fall within the scope of the MTCA. Plaintiff asserted the following state-law claims against Defendants Reaves and Welch in their individual capacities:[2] malicious prosecution, abuse of process, defamation, and intentional infliction of emotional distress.[3]

Defendants Reaves and Welch can not be held personally liable for "acts or

---

[2] The First Amended Complaint is unclear as to whether Plaintiff's state-law claims are asserted as to the individual Defendants in their individual capacities, official capacities, or both. *See* First Amended Complaint at 22-23, *Burroughs v. City of Laurel, Miss.*, No. 2:19-CV-48-KS-MTP (S.D. Miss. June 5, 2019), ECF No. 16. Plaintiff generally asserted that each individual Defendant was sued in his individual and official capacities. *Id.* at 3. But in briefing, Plaintiff conceded that his state-law claims were only asserted against the individual Defendants in their individual capacities.

[3] Plaintiff also asserted a claim of "outrage." Under Mississippi law, a tort claim of "outrage" is the same thing as intentional infliction of emotional distress. *See Raddin v. Manchester Educ. Found., Inc.*, 175 So. 3d 1243, 1252 (Miss. 2015); *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 178-79 (Miss. 1999).

omissions occurring within the course and scope of [their] duties." MISS. CODE ANN. § 11-46-7(2). However, they "shall not be considered as acting within the course and scope of [their] employment . . . for any conduct" constituting "fraud, malice, libel, slander, defamation or any criminal offense." *Id.*; *see also* MISS. CODE ANN. § 11-46-5(2). Mississippi's courts have held that tort claims falling within these excluded categories are outside the scope of the MTCA, *Zumwalt v. Jones County Bd. of Supervisors*, 19 So. 3d 672, 688 (Miss. 2009), and, therefore, the notice requirement does not apply to them. *Idom v. Natchez-Adams Sch. Dist.*, 115 F. Supp. 3d 792, 804 (S.D. Miss. 2015).

Therefore, Plaintiff's defamation claim falls outside the scope of the MTCA, and the notice requirement does not apply. MISS. CODE ANN. §§ 11-46-7(2), 11-46-5(2). Likewise, the notice requirement does not apply to Plaintiff's malicious prosecution claim. *See, e.g. Ellis v. Lowndes County*, 2017 WL 6045440, at *6-*7 (N.D. Miss. Dec. 6, 2017). It also doesn't apply to intentional infliction of emotional distress, s*ee, e.g. O'Reilly v. Univ. of Miss. Med. Ctr.*, 2019 WL 2583520, at *3 (S.D. Miss. June 24, 2019), or to malicious interference. *See, e.g. Springer v. Ausbern Const. Co., Inc.*, 231 So. 3d 980, 988-89 (Miss. 2017); *Wrecker Works, LLC v. City of Aberdeen*, 2017 WL 5502945, at *9 (N.D. Miss. Nov. 14, 2017).[4]

However, malice is not a required element of abuse of process. *See, e.g. Owens*

---

[4] Plaintiff has not clarified the nature of his "malicious interference" claim (i.e. interference with contract, business relations, or employment), and the Amended Complaint is no help. Regardless, malice is an element of the claim.

*v. Mason*, 2018 WL 6580509, at *5 (S.D. Miss. Dec. 13, 2018). Therefore, abuse of process is not excluded from the MTCA's definition of course and scope of employment, and the MTCA's notice requirement applies to it. *See, e.g. Harrison v. Yalobusha County*, 2010 WL 3937964, at *14 (N.D. Miss. Oct. 5, 2010) (dismissing abuse of process claim for failure to comply with MTCA notice requirement). It appears to be undisputed that Plaintiff did not comply with the notice requirement. Also, if abuse of process is not excluded from the MTCA's definition of course and scope of employment, Defendants Reaves and Welch cannot be personally liable. MISS. CODE ANN. § 11-46-7(2). Accordingly, the Court must dismiss Plaintiff's abuse of process claims against Defendants Reaves and Welch in their individual capacities.

## 2. *Personal Liability*

Next, Defendants argue that Defendants Reaves and Welch can not be personally liable for actions or omissions within the course and scope of their official duties. Defendants are correct. *See* MISS. CODE ANN. § 11-46-7(2). But the MTCA provides that public employees "shall not be considered as acting within the course and scope of [their] employment . . . for any conduct" constituting "fraud, malice, libel, slander, defamation or any criminal offense." *Id.*; *see also* MISS. CODE ANN. § 11-46-5(2). As noted above, Plaintiff's claims of defamation, malicious prosecution, intentional infliction of emotional distress, and malicious interference fall within these categories of torts excluded from the scope of the MTCA.

3.      *Statute of Limitations*

Defendants also argue that each of Plaintiff's state-law claims is barred by the applicable statute of limitations. Defendants contend that the one-year statute of limitations of MISS. CODE ANN. § 15-1-35 applies to each claim, but they provided no analysis or argument as to the claims' accrual.

First, Plaintiff's defamation claims are subject to a one-year statute of limitations. MISS. CODE ANN. § 15-1-35; *Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1213-14 (Miss. 2003). A defamation claim accrues on the date the allegedly defamatory material is published to a third person or to the public at large . . . ." *Lane v. Strang Commc'ns Co.*, 297 F. Supp. 2d 897, 900 (N.D. Miss. 2003); *see also Fairley v. ESPN, Inc.*, 879 F. Supp. 2d 552, 554-55 (S.D. Miss. 2012). Although Plaintiff claims "upon information and belief" that Defendants leaked false and/or misleading information to the press, Plaintiff did not specify the date on which Defendants allegedly published defamatory material to third parties or the public. The statute of limitations is an affirmative defense. *See, e.g. Sun State Oil, Inc. v. Pahwa*, 2019 WL 138650, at *2 (S.D. Miss. Jan. 8, 2019). Therefore, the burden is on Defendants to prove the date on which Plaintiff's claims accrued, and this issue can not be resolved in the present motion.

Next, Plaintiff's malicious prosecution claims are subject to a one-year statute of limitations. MISS. CODE ANN. § 15-1-35; *Bankston v. Pass Rd. Tire Ctr., Inc.*, 611 So. 2d 998, 1003 (Miss. 1992). A claim of malicious prosecution accrues on the day the

underlying criminal proceeding has been terminated in favor of the plaintiff. *Jordan v. Premier Entm't Biloxi, LLC*, 2014 WL 991733, at *6 (S.D. Miss. Mar. 13, 2014). Plaintiff did not plead the date on which the underlying criminal proceedings terminated in his favor, but he represented in briefing – and Defendants did not deny – that he was acquitted on all relevant charges in August 2018. Plaintiff filed this action in April 2019. So, it appears that the malicious prosecution claim is not barred by the applicable statute of limitations. Regardless, the statute of limitations is an affirmative defense, *Pahwa*, 2019 WL 138650 at *2, and Defendants have the burden of proving the date on which Plaintiff's claims accrued if the facts alleged in the Amended Complaint are not dispositive on the issue.

Intentional infliction of emotional distress is subject to a one-year statute of limitation. MISS. CODE ANN. § 15-1-35; *Trustmark Nat'l Bank v. C. Brent Meador*, 81 So. 3d 1112, 1118 (Miss. 2012). A claim for intentional infliction of emotional distress accrues on the date upon which the intentional acts forming the basis of the claim occurred. *Citifinancial Mortg. Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007). Plaintiff did not allege the dates on which the acts forming the basis of his intentional infliction of emotional distress claim occurred. The statute of limitations is an affirmative defense, *Pahwa*, 2019 WL 138650 at *2, and Defendants have the burden of proving the date on which Plaintiff's claims accrued if the facts alleged in the Amended Complaint are not dispositive on the issue.

Finally, claims of malicious interference with business relations or contract are

subject to a three-year statute of limitations. MISS. CODE ANN. § 15-1-49; *Pahwa*, 2019 WL 138650 at *2; *J.A.M. Promotions, Inc. v. Tunica County Arena & Exposition Ctr., Inc.*, 2010 WL 1418856, at *1 (N.D. Miss. Apr. 7, 2010); *Nichols v. Tri-State Brick & Tile Co., Inc.*, 608 So. 2d 324, 333 (Miss. 1992). The events leading to this case began in June 2017, and Plaintiff filed this action in April 2019. Therefore, the applicable statute of limitations does not appear to bar Plaintiff's claims of malicious interference.

## B.    *Punitive Damages*

Next, Defendants argue that Plaintiff's claims for punitive damages against the City of Laurel must be dismissed. *See Newport v. Fact Concerts*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Gill Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir. 2015). Plaintiff concedes that punitive damages are not available under Section 1983 against the municipal Defendant.[5]

## C.    *Declaratory & Injunctive Relief*

Defendants argue that Plaintiff's claims for declaratory and injunctive relief must be dismissed because Plaintiff did not plead facts demonstrating a credible threat or demonstrated probability that he will suffer future constitutional injuries. In response Plaintiff clarified that he is not seeking any particular form of injunctive relief, and that the only declaratory relief he seeks is a declaration by the Court that

---

[5] Plaintiff also clarified in briefing that his state-law claims are only asserted against the individual Defendants in their individual capacities. So, the Court need not address availability of punitive damages against the City under state law.

Defendants violated his constitutional rights if he is successful at trial. In this respect, Plaintiff's requests for declaratory and injunctive relief appear to be mere boilerplate. Therefore, Defendants' motion to dismiss such claims is moot.

## D. *Official Capacity Claims*

Defendants argue that the Court should dismiss Plaintiff's claims against the individual officers in their official capacity because they are mere restatements of the claims against the City.

> Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Thus, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

*Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (punctuation and citations omitted).

When a plaintiff asserts official-capacity claims against a government official under Section 1983, "the real party in interest is the [government] entity." *Id.* at 395-96 (official-capacity claims subsumed by claims against government entity). There is no advantage to Plaintiff, practical or otherwise, in retaining the official-capacity claims against the individual Defendants alongside the identical claims against the City. Maintaining both needlessly clutters the record, and they are functionally the same causes of action. This Court's typical practice has been to dismiss such redundant claims. *See, e.g. Seibert v. Jackson County, Miss.*, 2014 WL 4146487, at *2

(S.D. Miss. Aug. 19, 2014). Therefore, the Court grants Defendants' motion as to the official-capacity claims against the individual Defendants.

**E.     *§ 1983 Malicious Prosecution & Abuse of Process***

Defendants argue that Plaintiff's Section 1983 claims based upon alleged malicious prosecution and/or abuse of process must be dismissed because there is no freestanding constitutional right to be free from malicious prosecution or abuse of process. Plaintiff denies having asserted such claims. Therefore, as Plaintiff conceded that he has not asserted any freestanding Section 1983 claims for malicious prosecution or abuse of process, and Defendants have not identified any specific count in the Amended Complaint that purportedly asserts such claims, the Court denies this aspect of Defendants' motion as moot.

**F.     *§ 1983 Stigma Plus Infringement***

Defendants argue that the Court must dismiss Counts II and IV of the Amended Complaint to the extent that they are premised upon any alleged defamation or leaking of false information. Defendants argue that there is no constitutional right to be free from defamation. In response, Plaintiff clarifies that he is asserting a "stigma-plus-infringement" claim.

Generally, "the infliction of stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). "[T]here is no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within

the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Id.* But "damage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983." *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). Therefore, a plaintiff asserting that a public official has damaged his reputation must "show stigma plus an infringement of some other interest." *Blackburn*, 42 F.3d at 935-36.

To demonstrate stigma, "the plaintiff must prove that the stigma was caused by a *false* communication." *Id.* at 936. "[F]or a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like." *Id.* The Fifth Circuit has "found sufficient stigma only where a state actor has made concrete, *false* assertions of *wrongdoing on the part of the plaintiff*." *Id.* "To establish the infringement prong, a plaintiff must show that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or one of the incorporated provisions of the Bill of Rights." *Thompson*, 70 F.3d at 392.

Plaintiff alleged that Defendants leaked false and/or misleading information in a deliberate effort to create bias in the pool of citizens from which the grand and petit juries in his criminal proceeding were selected. Specifically, Plaintiff alleges that Defendant Welch "allowed the allegedly 'failed' polygraph examination to be leaked and disseminated by media outlets in an apparent attempt to tarnish and destroy [Plaintiff's] reputation while intentionally tainting any potential Jones County jury

pool." Amended Complaint [16], at 10. Plaintiff contends 1) that Defendant Welch "only had a probationary license" to conduct such examinations, 2) that the polygraph machine was "outdated," 3) that Welch relied on procedures that an officially licensed polygraph examiner would know were inaccurate, 4) that Welch had worked on a previous case involving Plaintiff, and 5) that the examination should not have been administered within forty-eight hours of a traumatic event or following an interrogation. *Id.* at 4-5. According to Plaintiff, Welch knew the polygraph examination was unreliable for these reasons, yet still leaked it to the public. *Id.* at 10.

In the Court's opinion, these allegations are sufficient to plead the stigma prong of a stigma-plus-infringement claim. Defendants dispute Plaintiff's factual allegations, but when reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock*, 624 F.3d at 210.

As for the infringement prong, Plaintiff alleges that he received death threats and threats of physical violence, but he did not allege any physical or economic harm. Plaintiff also alleges that Defendants' dissemination of false information compromised his right to due process because Defendants leaked fabricated evidence and false information in a deliberate effort to create bias in the pool of citizens from which the grand and petit juries in his criminal proceeding were selected.

The parties have not provided any helpful briefing on the question of whether

these allegations are sufficient to meet the infringement prong of the stigma-plus-infringement analysis. Neither party has cited any authority squarely supporting or knocking down Plaintiff's theory. Therefore, the Court presently denies this aspect of Defendant's motion. Defendant is, of course, free to seek judgment on the pleadings or summary judgment if it wishes to revisit this issue later, but the Court believes it more prudent to wait and address this issue after the parties clarify matters in discovery.

## G.    § 1983 Fabrication of Evidence

Next, Defendants argue that any § 1983 claims premised on alleged fabrication or misrepresentation of evidence must be dismissed because Defendants enjoy absolute immunity from liability for anything occurring before the grand jury. In response, Plaintiff concedes that Defendants are immune from liability for their actions before the grand jury. However, Plaintiff argues that his § 1983 claims for the fabrication and misrepresentation of evidence extend beyond the grand jury proceedings. Specifically, Plaintiff argues that Defendants fabricated, misrepresented, and manipulated evidence and reports – including the intentional omission of exculpatory evidence – during their investigation and in their pursuit of an arrest warrant and indictment.

There is no "substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause." *Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).

14

Therefore, there is no freestanding constitutional right to be free from malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). However, "additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation." *Id.* at 953.

For example, "a state's manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause . . . ." *Id.*; *see also Boyd v. Driver*, 579 F.3d 513, 515 (5th Cir. 2009). Likewise, a police officer violates a suspect's constitutional rights when he "procures false identification by unlawful means," "deliberately conceals exculpatory evidence," *Geter v. Fortenberry (Geter II)*, 882 F.2d 167, 170 (5th Cir. 1989), or "otherwise unlawfully influenc[es] witnesses . . . ." *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010). Therefore, "a victim of intentional fabrication of evidence by officials is denied due process when he is either convicted or acquitted." *Cole v. Carson (Cole I)*, 802 F.3d 752, 768 (5th Cir. 2015), *vacated on other grounds* 137 S. Ct. 497 (2016). There is a "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Id.* at 771.

Here, Plaintiff alleges that Defendants deliberately fabricated evidence and used it to frame him. That is sufficient to state a due process claim against Defendants under the precedents cited above. Therefore, the Court finds that Plaintiff has adequately stated a § 1983 claim for the violation of his Fourteenth

Amendment rights arising from Defendants' alleged fabrication of evidence against him.

## H.    *Defendant Welch*

Defendants argue that Plaintiff's claims against Defendant Welch should be dismissed. First, Defendants dispute Plaintiff's factual allegations. The Court rejects this argument. When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock*, 624 F.3d at 210.

Next, Defendants broadly argue that Plaintiff failed to state any claim for relief against Welch, citing general case law regarding qualified immunity and notice pleading. But they did not address any specific cause of action from the Amended Complaint, or any of Plaintiff's factual allegations. The Court declines to sift through Plaintiff's pleading and make Defendants' arguments for them. If Defendants believe that Plaintiff failed to state a claim against Welch, or that Welch is entitled to qualified immunity from liability against Plaintiff's claims, then they are obligated to provide the Court with specific argument as to each cause of action.

## I.    *§ 1983 Failure-to-Train*

Defendants argue that Plaintiff did not provide enough specific facts in support of his failure-to-train claim. Specifically, Defendants contend that Plaintiff did not allege any specific deficiencies in the City's training and/or supervision of its employees, or any facts demonstrating a pattern of similar constitutional violations.

Defendants argue that Plaintiff only provided a formulaic recitation of the elements of the claim, without any supporting facts.

"To prevail on a failure-to-train theory, a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018). The "plaintiff must allege with specificity how a particular training program is defective." *Id.*

"[D]eliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). Plaintiff must show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010). Ordinarily, this standard "requires a pattern of similar conduct." *Jordan v. Brumfield*, 687 F. App'x 408, 415-16 (5th Cir. 2017). But a plaintiff can also "establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003). The single-incident exception is

narrow, though, and it only applies "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.*

The Court denies this aspect of Defendants' motion. Plaintiff alleged that Defendant Welch "allowed the allegedly 'failed' polygraph examination to be leaked and disseminated by media outlets in an apparent attempt to tarnish and destroy [Plaintiff's] reputation while intentionally tainting any potential Jones County jury pool." Amended Complaint [16], at 10. Plaintiff contends 1) that Defendant Welch "only had a probationary license" to conduct such examinations, 2) that the polygraph machine was "outdated," 3) that Welch relied on procedures that an officially licensed polygraph examiner would know were inaccurate, 4) that Welch had worked on a previous case involving Plaintiff, and 5) that the examination should not have been administered within forty-eight hours of a traumatic event or following an interrogation. *Id.* at 4-5. According to Plaintiff, Welch knew the polygraph examination was unreliable for these reasons, yet still leaked it to the public. *Id.* at 10. Plaintiff claims that Defendants "knew or should have known that the use of polygraph examinations is highly specialized and that persons conducting these tests must be trained and supervised." *Id.* at 19. He alleges that the City provided no training or supervision whatsoever regarding the use of polygraph examinations.

Plaintiff alleged several other blunders in the course of the investigation. He

claims that Defendants did not notice "blowback and tissue" on Sinclair's forearm which corroborated Plantiff's version of events. *Id.* at 9. He claims that Defendants did not take fingerprints from Sinclair's firearm or holster. *Id.* Finally, Plaintiff alleged that Defendants promoted multiple theories supporting his guilt that were wholly speculative and unsupported by any of the actual evidence, demonstrating that they were more concerned with finding a way to charge him with murder than with finding the truth. *Id.* at 10-11.

Plaintiff further alleged that based only on the allegedly faulty polygraph examination, Defendants detained him for over eighty-six hours without seeking an arrest warrant. *Id.* at 6. During this time period, Defendants executed two search warrants on his home. *Id.* After the first search turned up no incriminating evidence, they went back for a second warrant. *Id.* Defendants also "performed multiple strip searches" on Plaintiff while he was detained. *Id.* According to Plaintiff, multiple witnesses stated that Defendants "did not want to hear or receive evidence" corroborating Plaintiff's version of events. *Id.* at 7.

In the Court's opinion, Plaintiff alleged enough facts to support a failure-to-train claim against the City. First, Plaintiff has alleged a specific flaw in the City's training and supervision related to the use of polygraph examinations in criminal investigations: there is no training or supervision. Given the high stakes of criminal investigations, and the potential for tainted and/or unreliable results in polygraph

examinations,[6] the Court finds that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Valle*, 613 F.3d at 547.

Plaintiff also alleged that the City "wholly failed to train and supervise its staff regarding investigations of criminal matters, the preservation of evidence, and the use, disclosures, and preservation of exculpatory evidence." Amended Complaint [16], at 20. In light of Plaintiff's allegations of serious problems with Defendants' investigation of Sinclair's death, the Court likewise finds that the inadequacy of the City's training and/or supervision is obvious and likely to result in violations of constitutional rights. The Court denies this aspect of Defendants' motion.

## J.    *Argument First Raised in Reply*

In their reply brief, Defendants first argued that the chain of causation for any claims arising from Plaintiff's arrest, imprisonment, investigation, and/or prosecution was broken by the grand jury's finding of probable cause.[7] In wrongful arrest cases, an officer can not be liable "if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or grand jury, for that intermediary's independent decision breaks the causal chain and

---

[6] *See, e.g. United States v. Pettigrew*, 77 F.3d 1500, 1514-15 (5th Cir. 1996); *United States v. Posado*, 57 F.3d 428, 433-34 (5th Cir. 1995).

[7] Defendants also argue that the state trial judge's denial of Plaintiff's motion for a directed verdict at his trial constitutes a finding of probable cause. They have not cited any law in support of this argument, and the Court rejects it.

insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). But the "chain of causation is broken only where all the facts are presented . . . , where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information . . . from the independent intermediary. Any misdirection of the magistrate or grand jury by omission or commission perpetuates the taint of the original official behavior." *Id.*; *see also Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Morris v. Dearborne*, 181 F.3d 657, 673 (5th Cir. 1999).

Plaintiff alleged that Defendants intentionally withheld exculpatory evidence from the grand jury and knowingly presented fabricated and/or misleading evidence to the grand jury. At this stage of proceedings, the Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock*, 624 F.3d at 210. Therefore, the Court rejects Defendants' argument that the impartial intermediary doctrine mandates dismissal of Plaintiffs' claims.

### IV. CONCLUSION

For these reasons, the Court **grants in part and denies in part** Defendants' Motion to Dismiss [18]. The Court grants the motion with respect to Plaintiff's state-law abuse of process claim against the individual Defendants in their individual capacities, Plaintiff's claim for punitive damages against the City, and Plaintiff's § 1983 official-capacity claims against the individual Defendants. The Court also grants the motion as to any claims arising from Defendants' alleged testimony before

the grand jury, pursuant to Plaintiff's concession in briefing. The Court denies the motion in all other respects.

SO ORDERED AND ADJUDGED this 5th day of September, 2019.

/s/   Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE